IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIE PRUDE                                         *

     Plaintiff,                                  *

v.                                                   *          Civ. No. DLB-26-0389

DIANNA L. JONES, *et al.*,                           *

     Defendants.                                 *

## MEMORANDUM OPINION

On January 30, 2026, Willie PruDe filed a civil rights complaint under 42 U.S.C. § 1983 against his former wife Dianna L. Jones, court-appointed trustee William Fanning, and court-appointed real estate agent Laura Forbes. ECF 1 (compl.); *see* ECF 3 (am. compl). PruDe alleges that the defendants violated his procedural due process and equal protection rights when they deprived him of his right to the real property that he and Jones had jointly owned. He seeks a declaratory judgment and injunctive relief to establish his ownership of the real property at issue and to prevent the defendants from conducting a forced sale. ECF 3. PruDe filed motions to stay state court proceedings regarding the real property, to stop the defendants from selling or taking possession of the property, to stop the Charles County Sheriff from evicting him from the property, and for summary judgment. ECF 4, 5, 6, 7, & 9. For the following reasons, the motions are denied, and the complaint is dismissed without prejudice.

## I.     Background

On September 27, 2019, the Circuit Court for Charles County entered a divorce decree dissolving PruDe and Jones's marriage. ECF 3, at 3. The divorce decree incorporated a May 6, 2019 property settlement agreement ("May PSA") that provided for the real property that PruDe and Jones owned together as tenants by the entireties at 4667 Pebble Beach Court, Waldorf,

Maryland 20602 to be transferred to Jones. *Id.*; ECF 3-5, at 14, 19. The May PSA stated that Jones would have a new deed drafted and then PruDe would transfer the title to Jones within ten days. ECF 3-5, at 19. However, on October 25, 2019, Jones and PruDe executed a quit claim deed transferring sole title of the real property to PruDe. ECF 3-7, at 4. The next day, October 26, 2019, PruDe and Jones executed a second property settlement agreement ("October PSA"), agreeing, consistent with the quit claim deed, that Jones would "relinquish all rights, ownership, and responsibilities to the residence and remaining property." *Id.* at 6.

More than three years later, on March 21, 2023, Jones filed a petition for contempt with the Circuit Court for Charles County, seeking an order requiring PruDe to "sign the deed so [Jones could] sell the property." ECF 3-5, at 12. She did not disclose the October PSA or the quit claim deed to the court. ECF 3-5, at 30.

On September 6, 2023, Jones and PruDe executed a notarized amendment to the May PSA, consistent with the quit claim deed and the October PSA, revising the original terms to confirm that PruDe was "responsible for all expenses for the marital property" and "shall keep all of the contents of the martial property." ECF 3-7, at 8.

PruDe alleges that he and Jones signed a release of liability on August 29 and September 6, 2023, respectively, "to remove [Jones] from liability" and to enable PruDe to apply for a loan instead of selling the property. ECF 3, at 4. But then, in April 2024, Forbes advised Jones against proceeding with the release of liability. *Id.* Jones took Forbes's advice, making it necessary to sell the property. *Id.* Meanwhile, "[d]espite notice of the [release of liability] cure and the deeds/agreements, the trustee continued to pursue a sale" of the property. *Id.*

On January 13, 2026, the Circuit Court for Charles County entered an order for the court-appointed trustee to take possession of the real property. ECF 3-5, at 33. PruDe then filed this

2

§ 1983 case to challenge the state court order depriving him of the property. ECF 3, at 4, 5. He claims that the state court entered the order because Jones failed to disclose the October PSA and the quit claim deed, which would have established that the property was his.

PruDe argues that the defendants are persons acting under color of state law who violated his due process and equal protection rights. *Id.* PruDe brings § 1983 claims against the defendants and seeks: (1) a declaration that he is the sole owner of the property; (2) a declaration that the forced sale violated his procedural due process and equal protection rights; and (3) an injunction requiring the defendants to cease sale efforts, to remove and recuse Forbes and Fanning, and to release Jones from liability for the property so that PruDe can move forward with a home loan. ECF 3, at 4–6.

## II.    Standard of Review

This Court has the inherent authority to dismiss a claim *sua sponte* if the allegations are frivolous. *See Mallard v. U.S. Dist. Ct. for S.D. of Iowa*, 490 U.S. 296, 307–08 (1989) (noting court's authority to dismiss frivolous claims "even in the absence of [a] statutory provision"); *Smith v. Kagan*, 616 F. App'x 90 (4th Cir. 2015) (unpublished) (mem.) ("Frivolous complaints are subject to dismissal pursuant to the court's inherent authority, even when the plaintiff has paid the filing fee."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) (same); *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (same); *Smith v. U.S. Dep't of Def.*, No. ELH-21-1836, 2021 WL 3367821, at *1 (D. Md. Aug. 3, 2021). A claim "is frivolous where it lacks an arguable basis either in law or in fact," as the "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *superseded by statute*

3

*on other grounds as noted in Quartey v. Obama*, No. PJM-15-567, 2015 WL 13660492, at *1 (D. Md. Mar. 4, 2015).

PruDe is proceeding pro se. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

III.    **Discussion**

A.  **Section 1983 Claims**

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived them of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person

4

acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable under § 1983, the defendant "must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). If the defendant is not a state actor, the defendant's conduct must "be fairly attributable to the State." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 181 (4th Cir. 2009) (quoting *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006)). "[T]here is 'no specific formula' for determining whether state action is present . . . . 'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Id.* at 182 (quoting *Holly*, 434 F.3d at 292); *see Goldstein v. Chestnut Ride Vol. Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000) ("[T]he state action determination requires an examination of all the relevant circumstances, in an attempt to evaluate 'the degree of the Government's participation in the private party's activities.'" (quoting *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 614 (1989))). A private actor may be considered a state actor when the state, for example, "delegate[s] a traditionally and exclusively public function to a private actor," coerces the private actor to violate the constitution, delegates a task to a private actor "to evade a clear constitutional duty," or "commit[s] an unconstitutional act in the course of enforcing a right of a private citizen." *Andrews v. Fed. Home Loan Bank*, 998 F.2d 214, 217 (4th Cir. 1993).

PruDe has not adequately alleged that the defendants—his ex-wife, a court-appointed trustee, and a court-appointed real estate agent—have a sufficiently close relationship with the State of Maryland from which the Court could plausibly infer that they are engaged in the state's actions. PruDe has not identified any public function that Maryland has delegated to the defendants. Examples of "traditionally and exclusively public function[s]," *see Andrews*, 998 F.2d at 217, include "the operation of a town," *see DeBauche*, 191 F.3d at 508 (noting that "[t]his

category is very narrow" and does not include, for example, "[t]he hosting of political debates"); fire protection, *see Goldstein*, 218 F.3d at 343–44 (noting that the Supreme Court had not decided whether "such functions as education, fire and police protection, and tax collection" could be "delegate[d] to private parties" and concluding fire protection is a function "traditionally exclusively reserved to the State" so that volunteer fire company could be state actor); and the provision of food services to incarcerated individuals, *see Coleman v. Aramark*, 31 F. App'x 808, 809 (4th Cir. 2002) (per curiam) (unpublished) (assuming without deciding that Aramark acted under color of state law for purposes of § 1983 by "performing the traditional governmental function of providing food service at the Jail").[1] The defendants' conduct does not remotely resemble these instances in which the state has delegated "traditionally and exclusively public function[s]" to private actors.

Additionally, mere appointment by the court is insufficient to make a private actor a state actor. *See Philips*, 572 F.3d at 178–79, 184 (concluding that nonprofit corporation with board members appointed by Pitt County and the Board of Governors of a state university, was not a state actor when it terminated Philips's hospital privileges because Philips did not "allege that the appointing governmental entities played any role in the specific decision to terminate his privileges" and "once appointed, a member of the Board [was] protected from undue influence by

---

[1] Contrast those examples of traditionally and exclusively public functions with the conduct of private citizens who merely provide services for the state. *See, e.g.*, *Davis v. Dean*, No. TDC-24-2609, 2026 WL 309929, at *3 (D. Md. Feb. 5, 2026) (collecting cases holding that "a vendor selling products to prisoners does not act under color of state law"); *Polk County v. Dodson*, 454 U.S. 312, 324 (1981) (holding a public defender does not act under color of state law); *Milburn v. Anne Arundel Cnty. Dep't of Social Servs.*, 871 F.2d 474, 477–79 (4th Cir. 1989) (concluding that state licensure and entrustment with child care did not make foster parent a state actor); *Tolbert v. Kletzing*, No. 23-530, 2026 WL 497760, at *6 (W.D. Va. Feb. 23, 2026) (collecting cases holding that provision of emergency care to an incarcerated individual does not make a physician a state actor); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351–53 (1974) (holding that "the supplying of utility service is not traditionally the exclusive prerogative of the State").

the appointing authority in that a Board member may only be removed for cause, which . . . is defined and limited"); *Hardwick-Lewis v. Brock & Scott, PLLC*, No. LKG-25-1578, 2025 WL 3652936, at *6 (D. Md. Dec. 17, 2025) (concluding that auctioneer "conduct[ing] [a] foreclosure sale . . . pursuant to a court order" was not a state actor because the plaintiff did not allege that the auctioneer "[was] affiliated with any governmental entity" or "acted on behalf of any government in connection with this foreclosure sale"); *Green-Jordan v. Taylor*, No. DMG-22-00170, 2023 WL 7739998, at *1, *5 (C.D. Cal. Oct. 5, 2023) (concluding that real estate agent and real estate company that oversaw property listing in conjunction with court-ordered partition sale were not state actors because the plaintiff did not allege that they "were coerced or encouraged by state actors," that they performed a public function, that they acted jointly with the state, or that the state had "insinuated [itself] into a position of interdependence"); *Harmon v. Goodwin*, No. GNS-24-47, 2025 WL 450374, at *3–4 (W.D. Ky. Feb. 10, 2025) (concluding that court-appointed therapist was not a state actor because the plaintiffs did "not plausibly allege[] that [the therapist] was compelled in any way—merely by accepting a court appointment—that interfered with her professional judgment and independence, or that otherwise influenced any reports she made or any testimony she provided in the family court proceedings" and did not allege "that the state somehow controlled or directed the therapy provided by [the therapist] or her actions"); *Howe v. First Am. Title Agency*, No. 25-10213, 2026 WL 672956, at *4 (E.D. Mich. Mar. 9, 2026) (noting that "court-appointed personal representatives, estate executors, and estate administrators are not state actors for § 1983 purposes simply by virtue of their appointment").

Because PruDe fails to plead that Jones, Forbes, and Fanning engaged in the state's actions and should be deemed state actors, his § 1983 claims are dismissed.

**B. Declaratory Judgment Claim**

PruDe seeks a declaratory judgment. This Court may issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. It provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The statute requires the satisfaction of three elements before a court may exercise jurisdiction in a declaratory judgment action: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201). The Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law." *Gibraltar, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997). "[T]he operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

PruDe can pursue his declaratory judgment only if there is federal question or diversity jurisdiction. The Court's federal question jurisdiction hinged on PruDe's now-dismissed § 1983 claims. The Court does not have diversity jurisdiction in this case because Purdue and at least one defendant are residents of Maryland. *See* ECF 3-5, at 2; 28 U.S.C. § 1332(a)(1) (federal district courts have jurisdiction to hear "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States"). Thus, this Court lacks subject matter jurisdiction to grant the requested declaratory relief.

PruDe also cannot sustain an independent cause of action for a declaratory judgment. *See, e.g.*, *Poppleton Now Community Ass'n v. La Cite Dev., LLC*, 175 F.4th 455, 465 (4th Cir. 2026) ("A complaint for a declaratory judgment must state a claim on which relief can be granted or [a] cause of action, meaning that the plaintiff must plead substantive claims for which declaratory relief may be granted.") (quoting 22A Am. Jur. 2d Declaratory Judgments § 162); *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 752 n.6 (D. Md. 2020) ("The Declaratory Judgment Act 'provides a remedy in cases otherwise in the [c]ourt's jurisdiction; it does not create an independent cause of action.'") (quoting *Elec. Motor & Contracting Co. v. Travelers Indem. Co.*, 253 F. Supp. 3d 781, 793 (E.D. Va. 2017)). Without § 1983 claims to serve as substantive claims for which declaratory relief may be granted, the declaratory judgment claim also must be dismissed as a matter of law.

## IV.    Pending Motions

PruDe filed motions to stay state court proceedings regarding the real property, to stop the defendants from selling or taking possession of the property, to stop the Charles County Sheriff from evicting him from the property, and for summary judgment. ECF 4, 5, 6, 7, & 9.

Temporary restraining orders ("TRO") and preliminary injunctions serve "'to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit' so as 'to preserve the court's ability to render a meaningful judgment on the merits.'" *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 148 (4th Cir. 2024) (quoting *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quotation marks removed)). "Preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited

circumstances." *MicroStrategy Inc v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation omitted).[2]

To obtain a preliminary injunction, PruDe must establish four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm if the Court denies preliminary relief; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest. *Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). PruDe must establish all four factors. *Id.* PruDe cannot show that he is likely to succeed on the merits because he fails to state a claim. His motions for injunctive relief are denied.

Moreover, to the extent PruDe asks this Court to stay any state court proceedings that have not yet terminated, this Court is prohibited from granting "an injunction to stay the proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This law, which is known as the Anti-Injunction Act, dramatically limits the Court's power to issue an injunction against a party to litigation in a state court, and none of the rare exceptions authorizing this Court to enjoin pending state court proceedings is met here. For this additional reason, PruDe's motions to stay state court proceedings are denied.

Because PruDe fails to state a claim, he is not entitled to summary judgment under Rule 56. His motion for summary judgment is denied.

---

[2] Notice is not required for a TRO, which cannot last more than two consecutive two-week periods, unlike a preliminary injunction, which can last for the duration of the litigation if the defendant has notice and the opportunity to be heard. *See* Fed. R. Civ. P. 65. PruDe filed a certificate of service of his most recent motion for a TRO and preliminary injunction on the defendants. *See* ECF 9, at 3.

## V.        Conclusion

PruDe's amended complaint is dismissed without prejudice. PruDe's motions to stay state court proceedings regarding the real property, to stop the defendants from selling or taking possession of the property, to stop the Charles County Sheriff from evicting him from the property, and for summary judgment are denied.

A separate order shall issue.


Date: July 8, 2026

Deborah L. Boardman
United States District Judge